We'll hear argument next in No. 203297, Colgan v. Saul. I think we're doing this one virtually, is that right? Okay, so they're going to come up on the screen here. Thank you. Okay, I see Mr. Gorton on the screen. So, as I said, we're going to hear argument in No. 203297, Colgan v. Saul. Mr. Gorton. Thank you. Good morning, Your Honor. First of all, thank you for allowing us to do this remotely. This is a social security disability case. The primary issue involves the inability of the plaintiff to work consistently through the day and through the week. She can work, but not consistently. The standard is the vocational testimony, which is that if you miss one day of work per month or separately, 15% off that, then you can't work. In this case, every opinion indicates that there would be some time off task, and the administrative law judge finds none. We have opinions on the psychiatric side, from the commissioner's own consultants, the one who actually saw the claimant, moderate to moderate, on the site only, and the non-examining moderate on the site only for completing a schedule, maintaining proper attendance. On the physical side, the physician's assistant, Dr. Front, indicates that the claimant was hit on the head when she was working, sustained a concussion, and all of that is in my brief. But he opines that due to that, again, more than 15% off tasks and more than one day missed separately from the physical. And then, of course, the primary is the headaches. And she's seen by the neurologist at the Syracuse upstate facility who sees her multiple times. It sounds like what you're saying is that there's evidence in the record to say that the ALJ made an incorrect determination. But as long as there's some evidence in the record that supports the ALJ's determination, we need to uphold it, right? So what is the evidence that compels the conclusion that the ALJ was wrong? Right. If there are competing medical opinions, then your honor is correct. Then the administrative law judge is given substantial deference. But the standard is that the administrative law judge, on the one hand, has to give substantial deference if all of the opinions are the same, which in this case, every medical opinion, the one from the treating neurologist as to the headache. Well, the administrative law judge is not required to adopt all medical opinions. He's required to consider them, right? And if he gives reasons for why he's not going to credit a medical opinion, then he's allowed not to credit it. But whether your client is disabled is an administrative determination. It's not a medical determination, right? The medical determination is the extent of the impairment. The legal determination is whether the extent of the impairment. Counsel, was there any medical doctor that countered the treating physician? That is, wasn't the only evidence on the other side Lasser, who is not a medical doctor but is a psychologist? Number one, I agree to a certain extent. There absolutely is no medical opinion. Even faster. Usually in these cases, there is some doctor, medical doctor, and we usually inquire somebody who's examined. So leave aside the fact that Lasser didn't examine. But is there any medical doctor that counters what the treating physician said? There is none on any of the three issues. You have three separate issues all combining to render the claimant unable to work. And there is none on all three. And I don't even think that— I'm sorry. Just the idea that there isn't any medical opinion. I mean the ALJ was crediting medical opinions. He said he wasn't going to credit the medical opinion that was given in the checkbox form because he thought it was inconsistent with the treatment records from those same physicians. And that the treatment records were more credible than the checkbox form that was prepared by your client's attorney. Right? So he is relying on medical evidence. He's just not crediting the checkbox form. And we've had lots of cases where we say that an ALJ reasonably concludes that the checkbox form is not probative, is not dispositive, shouldn't be given substantial weight. Your Honor, I would disagree with that. First of all, even omitting the headaches, the commissioner's own consultants on the site side, moderate to marked, up to marked is not zero from the examining. And this is only on the site. And even Dr. Fassler on the one single critical issue of ability to work consistently says moderate. The ALJ says none. That doesn't even take into account the treating physician rule. And the treating physician rule is that in order to the ALJ has to give the same deference to the treating physician as this court has to give to the ALJ. And it does not. You haven't talked about the test that I understand applies here, which is that the treating physician's opinion gets controlling weight unless it's contradicted by either other medical evidence or overwhelmingly compelling non-medical evidence. Correct? That is correct. You're saying there was no other medical evidence that contradicts what the treating physician did. And that what the IJ did was basically reach the IJ's determination about what the medical evidence was rather than relying upon a doctor. And that you're saying that the compelling non-medical evidence, there wasn't that. The only evidence that is even set forth is Dr. Ward's report one time. She feeds him almost ten times, including after the October 9, 2018 report, which I'll get to in a minute. And her assessment is done after the October 9. The October 9 says that if the trigger – there are two different kinds of headaches. If the triggers are controlled, that is, if she is allowed to get rest, which is exactly what we're saying, then they would diminish. But that's the kind that are very harsh. But she also has the other kind that go for a day. And Dr. Ward saw her again three months later and indicated that the conditions were the same. Wrote her opinion five months later. Can I ask this question? I understand that you disagree with what the ALJ did. But in general, if in fact the ALJ has before him a form from a treating physician that contradicts the treatment records of that treating physician, the ALJ could say, well, I don't understand the discrepancy here. And I think the treatment records are more compelling than the form that the physician submitted. I understand that you disagree that that's the right determination here. But that is a legitimate thing for an ALJ to do in general, is it not? I don't think so unless the evidence is very significant. The standard over and over and over again is overwhelmingly compelling. And clearly there just isn't any in this case, let alone – Well, wait a second. I mean, if you really had something like a statement by the treating physician in the record which said this is okay, he can do any amount of work. And then he checks something which says he can't, then the ALJ might be able to do that. But what you're saying is that this record is nowhere near there, that the treating physician in his description of what is going on is showing any number of things that support the check that says that this isn't so, and that the ALJ has actually picked and chosen among these things, things which would make it look as though he could contradict the treating physician. And while we have cases which say that where the record is clear that ALJ can be affirmed, we have hundreds of cases which say that the one thing the ALJ cannot do is this kind of picking and choosing and then contradict with the treating physician when there is no medical evidence that way. Isn't that what your argument is? It is 100%, but exacerbating even that is that it's more than just the treating physician. We have four different opinions. Yes, of course. Four different opinions. Can you address the – Including from the commissioner, all saying that there is corruption, liability. Can you address the question about discounting the checkbox form? Because that's what the ALJ did. He said, well, it's just a checkbox form, and there's authority in this circuit that that can be discounted because it is a checkbox and it doesn't contain additional reasons connecting it to the finding on the checkbox form. Those are – number one, I would disagree because those are different kind of cases. The hearing is then right after that. And the doctor says, based upon all the time that she has seen him, that he does have headaches and that those headaches would diminish his ability to work consistently. And that is – and, again, that's one of the things we can do. The doctor said that the person would be off-task, have to be off-task, or probably be off-task 33 percent of the time. That was what was checked on the form, right? The doctor also said that – No, no, I'm just asking that question. Then I'm going to ask you another one. That one question is put. Right. And there was evidence in the record that 15 percent off-task is the threshold upon which one could make a determination or not. In other words, there are no jobs – if you're more than 15 percent off-task, there are no jobs in the economy for you. Right. More than 15 percent off-task from all the conditions combined or one day absence. Or one day absence a month. One day absence per month from all the conditions combined. Thank you. So the standard by which we review the ALJ's determination is substantial evidence, right? The – no. That's one part of it. The other part is did the ALJ comply with the law in assessing the medical opinions? And in this case – Right. So either there's a legal error or there's substantial evidence. So if it's an evidentiary question, then you need to point to evidence that compels the conclusion that the ALJ was wrong unless you can point to legal error. And the legal error you're pointing to is what? A violation of the treating physician rule? Oh, there's several. We're indicating that for all four of the opinions, including two from the commissioner's own hired funds, that they all found that claimant would not be able to – Right, but when you describe that, it sounds like you're talking about an evidentiary question. You're saying there are all of these reports that make these other findings. That doesn't sound like a legal error. There are four opinions, and the ALJ is not allowed to – without overwhelmingly compelling reason or at least without substantial reason – Well, haven't we said – You're talking about good reasons. Haven't we said that – The ALJ is not a doctor. Haven't we said that the ALJ has to provide good reasons for discounting a medical opinion? If the medical opinions are uncontradicted, which they are in this case, yes, the ALJ has to point to another opinion. Doesn't the – Or – Counsel, doesn't the ALJ at the very least have to go through the Burgess factors? Which you're talking about. And hasn't the ALJ in this case not gone through the ALJ? So that isn't there in this case a procedural error? Whatever we think ultimately of the merits, don't we have a procedural error here? Which we have said sometimes that the Burgess factors, if it's harmless, we can ignore it. But you'd have to have clear evidence that it is harmless so that then the standard of review becomes flipped in a different way. But didn't the ALJ go through the Burgess factors? Clearly not. Even – Well, we have said that when the ALJ doesn't do the Burgess factors, we do a search of the record and determine whether the ALJ had good reasons for departing from the physician opinion. Right? So the Burgess factors are not dispositive. It has to be that we've decided that the ALJ not only failed to articulate the Burgess reasons – factors explicitly, but also did not express good reasons for disagreeing with the physician opinion. And the example of that, for example, would be that the treating physician saw the claim once or twice and had nothing in their record. So are you asking us to hold that what the ALJ did here, the ALJ says, well, I'm not going to credit the checkbox form because I don't think it's consistent with the physician's actual treatment records and explains why. That's not a good reason? Well, for two reasons. One, in a case in which there's uncontroverted opinion is not allowed to override without – But it is controverted, right? What the ALJ is saying is that the checkbox form says one thing, but the treatment records say another thing, and so I have to make a decision as to which opinion to credit. Well, in regard to that, he points to one record out of nine from the neurologist at Upstate Medical who, after that record, gave her opinion in which she said that if the trigger such as rest – if there are none, if she can get rest, then the headaches go down. But that's our entire point is that – and he says that she can be exposed to bright lights one-third of the day. Okay, so that's our whole point. I think we have that argument unless there are further questions. Okay. We have reserved time for rebuttal, so we'll hear from you again. Let's turn to the government, Mr. Henry. Thank you, Your Honor. May it please the court, my name is Mike Henry. I represent the Acting Commissioner of Social Security. There's no dispute that Ms. Colgan has headaches and cognitive limitations and that they prevent her from going back to her past work as a teacher. The issue on appeal is whether substantial evidence supports ALJ's finding that Ms. Colgan could do other, less demanding jobs despite those limitations. Wait a second. Is the issue that or is the issue given that the ALJ did not do the Burgess factors, which conceded that the ALJ did not, that then there is enough evidence in the record so that we can say ourselves that the decision was a correct one, that it is harmless? It is on our cases. When the Burgess factors are not met, then the burden shifts the other way. It's no longer is there substantial evidence and so on, but can we say that the ALJ was correct even though the Burgess factors were not met clearly enough so that we don't need to go through that? Don't you have the standard of proof here turned around completely? Well, I wouldn't refer to it as a standard of proof, Your Honor. I would refer to it more as a question about whether the legal error that's alleged requires reversal, but I wouldn't call it a standard of proof. Well, reversal is one thing. Sending back for a treatment of the Burgess factors is another. Sure, and as outlined in the Commissioner's brief, I believe it's at page 35, the ALJ here comprehensively set forth his reasons for finding that Dr. Ward's opinion… And his reasonings were picking and choosing from Dr. Ward's and saying that there is an inconsistency. But is that inconsistency so clear that we can say with no medical evidence on his side that the ALJ could ignore going through the Burgess factors? There are a couple of points there, Your Honor, and I would dispute a few points. The first is that the ALJ didn't merely cite to inconsistency, nor would I agree with the characterization that the ALJ was simply picking and choosing. The ALJ's threshold reason was that the treating sources or one treating source, Dr. Ward, and then another non-acceptable medical source, Mr. Brunn, that both of their opinions were on these checkbox forms and that the only support that they provided for their opinions were their diagnoses, which in and of themselves don't say anything about the severity of the limiting effects of miscalling its impairments. And then in the space where they actually indicated specific functional effects, it was with regard to medication side effects. And as the ALJ accurately pointed out, those side effects were not reflected in the treatment records of Dr. Ward and Mr. Brunn. And, in fact, the records directly contradicted the assertion that those… except the ALJ reading and interpreting what the treating physicians and all the other physicians that spoke in favor of the appellant said. The ALJ goes and reads that, and the only thing that he has in support for his reading is somebody who is not a treater, didn't treat him, and wasn't a medical doctor. And don't we have any number of cases on facts like this where we have said that? There are, Your Honor. There are a number of cases, and that's actually part of the commissioner's argument, is that there are very vast inconsistencies in the case law that have the parties essentially talking past each other. But to address your factual point about whether there's any medical evidence on the other side, yes, there is. I would dispute Ms. Colgan's assertion that there's no evidence both factually and legally. First, with regard to the allegation that there was no accommodation of pace or attendance limitations, the ALJ did address pace and attendance by limiting Ms. Colgan to simple, low-stress work with no multitasking, detail-oriented tasks, no short deadlines, no teamwork. And that's at page 17 of the record. The problem here is I think there's a misfit between the normal case in which you're looking at whether a disability is really operative. You know, the disability itself is really operative. And here the ALJ spends some time talking about the daily activities of Ms. Colgan. But as your adversary has pointed out, the whole issue here is whether this particular individual can work consistently. That is, would she need to take a rest? Can she work up to 15% of her time? Well, 85% of the time. And that is what the debate is about, I believe, right? It's all about the consistency of her being able to work. Yes, I think so, Your Honor. And to that point, the state agency assessments from Dr. Fosler and Dr. Gauthier finding that Ms. Colgan – I'm sorry? The one that he relies on, the ALJ relies on, says that she can work consistently or she can work despite the headaches provided she gets sufficient amount of rest. But we don't know what that means because if she works for three hours and then needs an hour's worth of rest, she's over the limit. I'm sorry, which opinion are you referring to, Your Honor? This is the one that was referred to by your adversary. I don't have the name. It's one of the opinions of one of the other physicians. The only physician that suggests that she can work sufficiently to meet this 33% is a non-physician, a psychologist, Dr. Laffer, who didn't examine her. That's the only one who suggests clearly that she can do work up to that 15% disability, which would not be a disability. I don't see anything else in the record that doesn't suggest that she is disabled up to 33%. That is, I'd like you to point out to me somebody who is a physician or something in Dr. Ward's record that is inconsistent with the finding that she cannot do but she must take at least 33% time off. I will do that, Your Honor. I would like to just say that I think the focus on Dr. Foster's status as a psychologist is misplaced here because under the commissioner's regulations, a psychologist is an expert medical consultant who is tasked and presumed to be familiar with the disability regulations and perfectly capable of making determinations with regard to mental capacity. This is somebody who never examined her. That is true, Your Honor. But with regard to the evidence where you were talking about wanting a physician, I would point out that the state agency assessments encompass a finding that Ms. Colgan could work on a regular and continuing basis. I'm asking you to show me somewhere in the record on the side of all the people who testified in favor of the appellant something in the record that is really inconsistent with this finding of 33%, which is what they conclude. Of course, the checkbox would not by itself be enough, but is there anything in the record that suggests that what is in the checkoff is inconsistent given what they have said? At that point, given that the ALJ didn't even go through the Burgess factors, how can we say that a failure to do the Burgess factor is harmless? Yes, Your Honor. Dr. Fosler at age 86 of the transcript explicitly said that Ms. Colgan could work on a sustained basis, which is necessarily… What is a continuing basis? That's what Judge Walker asked. Continuing basis. An eight-hour day, 40 hours a week. Let's take eight hours a day. Sure. If you can't work for one of those eight hours, then that's sufficient to disqualify you. You can't get any jobs in the economy. Would you agree with that? I don't want to force it that way. If you have to take an extra hour out of the eight hours to rest, then you cannot – you're automatically entitled to disability, right? Assuming all the other factors are met at the five steps. I wouldn't say automatic, Your Honor. I thought there was testimony that the threshold was 15%. Well, if that's what you're using, then I would say on the facts of this case, yes, Your Honor. But I would also want to clarify when you say an extra hour that we're not talking about the regular built-in breaks over the course of an eight-hour workday. There are scheduled breaks every two hours, roughly for morning, lunch, and afternoon breaks, and that's actually reflected in the regulations. That's why I wanted to be careful in terms of making a broad proclamation that one hour would be per se disabling. But, yes, to your question about whether in this case the evidence would suggest that anything over 15% would be disabling, yes. But, again, my problem with the premise of the questions is that it loses sight of the fact that it is Ms. Colgan's burden to establish that she would be off-task more than 15% of the time. And the issue here is that these unsupported checkbox questionnaires from Dr. Ward and Mr. Brunt do not meet her burden of production and persuasion, as the ALJ found. Why do you say they are unsupported? They are checked, and then you have a record, and you have a record of people saying any number of things, none of which say that she can work 15%. All of them say more. Some of them say 33%. Some of them are unclear. But there is nothing that contradicts what the checkbox is. And there is nothing that says that the failure to go through this specifically in the Burgess way has – is harmless. Can we talk about the Burgess factors? So the Burgess factors are the frequency of examination and the length of the treatment relationship, the evidence in support of the treating physician's opinion, the consistency of the opinion with the record as a whole, and whether the opinion is from a specialist. Now, my reading of the ALJ's opinion is he did talk about whether the checkbox form – whether there was evidence in support of the opinion because he says, well, it's just a checkbox form. It doesn't provide evidence. And he does talk about the consistency of the opinion with the record as a whole because he's comparing the checkbox forms to the other treatment notes and other treatment records. And so it seems like he did not discuss the frequency of examination and the length, nature, and extent of the treatment relationship, and he did not discuss whether the opinion is from a specialist. And I guess I would ask you to address whether those factors would make a difference to the outcome here. No, Your Honor. I don't think they would. Then explain why. Well, for one thing, I don't think even Ms. Colgan in her brief indicates what the specialization for Dr. Ward would be. I believe she was a physical medicine and rehabilitation specialist, and it's not clear whether that would be a plus factor that would override the ALJ's analysis of the supportability and consistency factors. I would submit that it clearly would not, given the fact that the supportability and consistency factors are the most prominent and most important in the regulations. They're the only factors that are relevant in whether to assign an opinion controlling weight. And they're also the factors that this court is focused on in discussing these sort of unsupported checkbox forms where the doctor checks a box and simply refers to things like side effects with reduced concentration but doesn't quantify any of these effects. Okay, so even though the ALJ didn't address all the Burgess factors, the ALJ addressed the ones that are most significant. But then what about opposing counsel's argument that when the ALJ considered the consistency of the opinion with the record as a whole, he was focused only on one report from the treatment physician and not the totality of the medical evidence in the record? Well, I think that's wrong, Your Honor, and as I outlined in the brief, the ALJ focused on not this one piece of evidence, but in fact several, and I go through them in the brief, and I can refer to a few now. If you read the ALJ's decision as a whole, as this court has previously indicated that it must, rather than simply focusing on a single section of the ALJ's decision, the ALJ explained that Dr. Ward's and Mr. Brunt's opinions were unsupported because, for one thing, there are multiple reports that the headaches were short-lived if she was removed from certain triggers, including bright light and stress. And the ALJ said that he was accounting for those triggers in the RFC assessment that said 18 and 20 of the record, which is the ALJ's decision, and he cited pages 786 and 824 of the record for support. The ALJ noted that the side effects that were listed on the questionnaire weren't reflected in the treatment records and, in fact, were contradicted. For example, there was an indication that Adderall caused fatigue and reduced concentration, and the treatment records show that it actually had the opposite effect on Ms. Holgen, which is why she took it, 19 and 20 of the record, and the ALJ cited to pages 740, 788, 810, 811. The ALJ noted that Mr. Brunt's notes showed intermittent weakness, full range of motion, and no acute distress, 19, 734, and 737, but the ALJ accounted for that with a highly restricted RFC for sedentary work with limited reaching. The ALJ noted that Dr. Ward's notes… Can I ask you one question? Okay, so then your argument is that he is considering lots of evidence in the treatment records. Lots of evidence. But then when we talk about the residual functional capacity and he talks about would be able to perform the requirements of representative occupations, I mean, is it really right that he expects her to work as a pneumatic tube operator? Is that really a job that's available in the national economy? I would submit on this record all we have is the vocational experts on challenge testimony. The answer is yes. The court is… So these are jobs. …bound by the record. It's weird that it's identified as one of the examples. But you're saying that there is a determination that there are jobs in the national economy that allow for sedentary work and doesn't require overhead reaching and doesn't require bright lights that would trigger her headaches that she could perform? Yes, Your Honor. What is the case you're relying on for discounting the checkbox? I would rely on the Smith v. Berryhill case, Your Honor, which, as I pointed out in the brief, actually involves the same type of checkbox questionnaire submitted by the same attorney making the same arguments with regard to whether the checkboxes were uncontradicted. And in that case, this court explained that the burden of proof was on the claimant and that the lack of supporting evidence in the checkbox questionnaires was reason enough for the ALJ to discount them and that without that supporting evidence, the ALJ was not required to find that the claimant was as restricted as alleged. So the checkbox is just a key into further inquiry. In other words, if there is support for the checkbox that can be found elsewhere, then the checkbox is not a problem. You don't just throw away the checkbox. No, Your Honor. The fact that it was on a checkbox form and then was not well explained even though there was an opportunity for an explanation. So the question is when there is a checkbox that is not by itself enough, one has to then go back to the record and see whether these treating physicians and others have said things which basically support the checkbox, are not inconsistent with the checkbox, but you can only throw them out if they are in fact inconsistent with the checkbox. If the checkbox is nothing wrong, it just isn't enough by itself. That's all we've heard, isn't it? Yes, Your Honor, but I would just add one point that it's not just inconsistency we're looking for, but support. And that's one thing that is missing from a lot of… That reason cannot be that a checkbox was signed, that it's just not enough. Then the ALJ has to go and find that what the treating physician said was inconsistent with the checkbox because the treating physician's opinion is on our cases the ruling thing unless there is reason to discount it. So there must be reason to discount it. Now if the underlying record, as in the case you've cited, says this isn't so, then that's fine. But if the underlying record doesn't show that, then don't we start out with the treating physician being the governing rule? Well, Your Honor, the response to that is that this case is governed by the regulations. And it seems that you're referring to rules in case law that predates the regulations that we're applying here. And I would just note that this standard that you're referring to, this overwhelmingly compelling standard where the treating physician is… We are not having an ALJ making a medical decision because this is where the cases basically break down, that where it looks as though the medical… the ALJ is looking at this and saying, well, I don't think this person really was disabled. We throw it back. And where instead there is real evidence in the record that shows that the person was not disabled, then the treating physician's conclusion must stand. Without going back to our original treating physician can't be touched, which we don't do anymore. Well, Your Honor, I'm actually concerned with the framing of that question because it seems to read the supportability requirement right out of the regulations. Your question keeps going back to inconsistencies, but there's another piece of that. The treating physicians are entitled to deference, but as a threshold question, before they're given any sort of controlling weight, which is what Attorney Gordon is asking this court to do, they have to be well supported by objective medical findings and not inconsistent with other… So under the regulations, whether somebody is disabled is an administrative determination. It's not a medical determination, right? That's absolutely right. Right. So it's something that the ALJ is supposed to decide, that the agency is supposed to decide. And you can look to evidence from a treating physician to make a determination, but we don't say that it's a medical decision that's to be made by a treating… by a physician, right? That's right, Your Honor. So in fact, under the regulations, because it needs to be well supported, if the only medical opinion that somebody submitted in support of an application for disability benefits was a checkbox form from a physician that just said, check, the person is disabled, check, the person is going to be off task 33% of the time and there's no supporting evidence or record, an ALJ would be able – would an ALJ be able to not rely on that or would we have to treat it as dispositive? The ALJ would not – would be able to not rely on that. And that is essentially the Smith and Heeman cases cited in the Commissioner's brief. Well, the – Smith was a summary order, right, by this circuit? It was a summary order, Your Honor, but… And in that particular case, didn't you press to have it converted into an opinion? But this court refused to do that? Yes, Your Honor. And, you know, I wouldn't… But it relies on, as your adversary points out in his reply brief, it relies on Halloran. And Halloran was a case in which there were competing medical evidence and the – any finding about the nature of the checkbox was in the context of a situation where there was contrary medical evidence. Is that accurate? That's true, Your Honor, but we have the same thing here. I think that what my adversary is doing is trying to convert that case and make it seem as though the contrary medical evidence in there was direct or fuddle evidence. For example, a one-to-one correlation. You know, one doctor says 33 percent off task, the other one says no, this person could work 100 percent of the time. There's no indication in Halloran or in any of the cases that there's that level of rebuttal. They offered opinions that necessarily encompass a finding that Ms. Colgan can work on a sustained basis without any unusual, unscheduled breaks. Okay. Well, thank you, Mr. Henry. We'll turn back to Mr. Gordon on rebuttal. Okay. Very, very quickly. Let me first – Dr. Fassler, who is the commissioner's doctor. Can you speak up a little more loudly or get closer to a microphone? Okay. Can I unmute myself? No. We can hear you, but it seems fainter. Okay. Okay. I don't know what I did. I'm bad at this. First of all, with Dr. Fassler, he says she can work on a sustained basis, but in doing so, when she works on a sustained basis, she will have modern impairments, and this is transcript page 84. Number one, performing activities within the schedule, if she works on a sustained basis. Number two, modern impairments maintaining regular attendance. Number three, modern impairments being punctual within customary tolerances. Number four, modern impairments in her ability to complete a normal work day and work week or perform at a consistent pace without an unreasonable length – number and length of work periods. And we not only have – it doesn't have to be 33 percent, and it doesn't have to be off task. We not only have the off task, we have the advocacy. And the doctor that the commissioner relies upon most heavily says that if – that she can work in sustained work, but in doing so, she would have these modern impairments. The other huge factor that hasn't been really discussed as much as perhaps I should have or should have is that we're talking about headaches. Headaches are not susceptible to objective findings. We cite the cases. There are a dozen cases. Huge difference between this and Smith, which did not have headaches, did not have psychiatric issues, did not have issues that were not – those were all purely objective findings. And the treating orthopedic surgeon Fedorowicz – and I'm probably killing the pronunciation – he said – claimed it could work. He didn't specify it, which is why we took it on appeal. But the court found that his was contrary. That was a specific opinion. Here you've got absolutely none in a case of headaches. The headaches are clear. I mean, this lady got clocked on the head when she was doing her job, sustained a concussion, has headaches the entire time, one time in January. They might be better if she's allowed rest and if there's no bright light. But the judge's hypothetical said there could be bright light up to one third of the day. And with that, the vocational experts said, oh, well then there would be jobs. But clearly there couldn't because that's one of the triggers and the need for rest is one of the triggers. Thank you, Your Honors. Thank you very much, Mr. Gorton. The case is submitted.